[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Suzanne A. Anderson, and the defendant, were married on December 31, 1989 at New Fairfield, Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the CT Page 1515 complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of this marriage and no minor children have been born to the plaintiff wife since the date of marriage of the parties. Neither party has received state assistance.
The court finds the following additional facts.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that each party is equally at fault for the breakdown of the marriage.
The plaintiff was born on March 28, 1954. The plaintiff has health problems including Lupus and Fibomyalgia. She has problems with blood clots for which she has been hospitalized and takes medication. She also has heart problems, kidney problems and arthritis. The effects of the various medications that she takes consists of depression and exhaustion. Her medications also causes her to gain weight. She also suffers from sore throats and fever. These problems flair up with stress. She will need surgery for fusion for her neck in the future. She is presently employed full-time and on some occasions is unable to work due to her medical problems.
The plaintiff does not presently have health insurance through her employment. Her COBRA costs through the defendant's IBM employment would be $198 monthly, consisting of $177 monthly for medical; $15.90 monthly for dental; and $7 monthly for vision.
The plaintiff is presently employed as an operations manager for Expressway Courier, Inc. with a gross weekly income of $1000, and a net weekly income of $752.
Due to the differences in the parties respective ages, and the plaintiff's present employment, the plaintiff has a greater opportunity for future acquisition of capital assets and income than does the defendant.
The plaintiff has liabilities totaling $9987 as shown on Schedule A of her financial affidavit dated December 8, 1999.
When the parties married, the plaintiff owned a home in Plattsburgh, New York. CT Page 1516
The family home located at 35 Driftway Point Road, Danbury, Connecticut was purchased on May 16, 1989 for $210,000. The plaintiff refinanced the property that she owned in New York and used $50,000 of that refinancing towards the Danbury home. The property that she owned in Plattsburgh, New York, had a $23,000 mortgage on it immediately prior to the refinancing. That mortgage was increased to $81,000. The plaintiff received a check dated March 24, 1989 in the amount of $54,935.45 from the refinancing of the Plattsburgh, New York home. The Plattsburgh home was sold on March 16, 1990, and the plaintiff netted $20,600 from the sale. On April 3, 1990, the plaintiff used $20,000 from the sale of her Plattsburgh, New York home to reduce the balance on the first mortgage on the Danbury home from $156,817 to $136,817 and in the process changed the interest on the mortgage to a fixed interest rate.
The present fair market value of the Danbury family home is $240,000. It has a first mortgage with a balance of $122,000. It also has a home equity loan with a balance of approximately $18,500. The home equity loan was used in part purchase a 1996 Jeep, and with approximately $2500 of the home equity loan being used for repairs to the deck at the Danbury home.
Since acquiring title to the Danbury property, renovations were done to the property consisting of roof work, bathroom work, dining room hardwood floors, septic system, furnace, foundation work, new driveway and other improvements at a total cost of approximately $80,000. One of the improvements to the family home property was the construction of a barn at a cost of approximately $12,000. The money for these improvements came from the defendant's mother's funds.
The plaintiff also owns a one-half interest in property located at 38 Bailey Avenue, Plattsburgh, New York. Her parents transferred title to that property into her name and the name of her brother retaining a life interest in the property for themselves in 1996. Her mother is 82 years old and her father is 89 years old. The fair market value of the home is $75,500. Both of her parents presently live in the home and they are paying the real estate taxes on the home.
In addition to owning the home in Plattsburgh, New York at the time of marriage, the plaintiff also had $10,000 in a CD; $8000 in savings; $2500 in a house savings account and approximately $1000 in a checking account. CT Page 1517
When the parties married, the defendant owned a home in Clinton Corners, New York, that he still owns. The court finds that the fair market value of the Clinton Corners, New York, home is $67,400. He obtained title to that property on July 12, 1969. There was no mortgage on the property when he married the plaintiff. It originally had a ten year mortgage that was paid off by the defendant by July 12, 1979. The defendant resided in that property when he first met the plaintiff.
The defendant spent approximately $90,000 in improvements to the property at 49 Fisher Hill Road, Mineville, New York. The improvements included replacement of a septic system, a new roof, plumbing and electrical work, wallpapering, painting and other renovations. The court finds that the fair market value of the Mineville, New York home is $72,500. The defendant obtained title to the Mineville, New York property from his mother on July 31, 1987.
The defendant also owns property at Bridge Road, Crown Point, New York. He obtained title to that property on July 1, 1972. The fair market value of that property is $7000.
The defendant previously owned property located at Dannemora, New York. He originally owned the property with his mother and she transferred her interest in the property to him on July 31, 1987. He sold that property on August 11, 1989 for $60,000. He turned that $60,000 over to the plaintiff who in turn invested it into IBM stock. He also owned a 1989 Corvette at the time of the marriage that he purchased in 1973. Its present fair market value is $8000.
The defendant was born on April 23, 1930.
The defendant had gall bladder surgery in 1993 and had lung surgery three months later for cancer. He suffers from asthma and emphysema.
The defendant was employed by IBM when the parties married. He retired in August of 1991, and elected a joint and survivorship option with leveling on his retirement plan. He has had minimum earnings since his retirement. He had been earning in the low $40,000 salary range between the time the parties married and the time he retired. He was 62 years old when he retired. CT Page 1518
Under the joint and survivorship 50 percent option with leveling, the defendant received $1610.68 monthly from the date of retirement until age 65 on April 23, 1995. Commencing April 23, 1995, he receives $600.68 monthly. The present value to the defendant of his pension benefits is $71,000. The present value of the plaintiff's interest in that pension plan is $36,980. The defendant was employed at IBM for a total of twenty-three years, during which time the parties were married a total of approximately seventeen months or a coverture of 6.8 percent.
The defendant owns a 1999 Subaru with a present value of $20,000 and a loan balance of $12,800 and an equity of $7200. There had previously been motor vehicle damage for which he received a $14,400 collision damage check. The $14,400 was used as a down payment to purchase the 1999 Subaru he now owns with the balance financed through Chittenden Bank in Vermont, for which he has the present $12,800 loan balance.
The defendant has liabilities totaling $8520 as shown on his financial affidavit dated December 3, 1999. One of those liabilities is to MBNA credit card with a balance of $1050 that the defendant was ordered to pay following a pendente lite hearing. The second is a MBNA credit card with a balance of $2800 that the defendant incurred since the dissolution of action started. The defendant also has a People's MasterCard account with a balance of $4050 that he was ordered to pay following a pendente lite hearing. The defendant has one life insurance policy with IBM in which he is the named insured in the face amount of $50,000. The monthly premium on that policy is $84.15. He has a second $50,000 life insurance policy through IBM in which the plaintiff is the name insured. The monthly premium on that policy is $28.50. He also has a $10,000 life insurance policy through Vets Life in which he is the named insured.
The defendant's mother was in ill health and moved in with the parties at the family home in Danbury, Connecticut, in January of 1996, and remained with them until she died in August of 1996. During the seven months that she lived with them up to her death, she paid them $5000 a month for a total of $35,000.
The present value of the Galaxy fund that is in both names is $1504.42.
The present value of the defendant's IBM TDSP deferred compensation plan is $183,879.83. It had a value of approximately CT Page 1519 $35,600 when the parties married.
This account is in the defendant's name only.
The Calvert funds are in joint names and has a present value of $16,867.19.
As of December 30, 1989, the value of the Ascend account that was in the defendant's name only was $3225. The present value of the Ascend stocks is $72,607. The Ascend account is now in the name of the plaintiff and the defendant.
The defendant has an Advantus Spectrum fund that was started in 1996 with money that the defendant received from his mother. The value of the Advantus funds shown on the defendant's financial affidavit was $5555.06 when the trial started. That fund is in his name only. The defendant has returned $1000 to the Advantus funds account after the trial started thereby increasing its present value to $6555.06.
The present value of the Delaware Decatur fund is $1076.44.
The Delaware Decatur fund is in the defendant's name only.
The defendant also has a Templeton account with a present value of $1419.93. The Templeton account shown on the defendant's financial affidavit in the amount of $1419.93 is in his name only and is separate from the Templeton account shown on the plaintiff's financial affidavit which is in her name only in the amount of $9682.
The defendant has a Vanguard Index IRA with a value of $9624.60.
This account is in the defendant's name only.
The defendant has $704 in Oppenheimer funds in his name only.
The defendant also has treasury bonds with a value of $825. His financial affidavit of December 3, 1999 shows four shares of Fiberboard with a value of $220. Those shares no longer exist.
The plaintiff has a deferred compensation plan with Prudential with a value of $8936. CT Page 1520
The plaintiff has an Advantus account in her name only that was started in 1996 or 1997. The funds in that account came from her bonus checks. Its present value is $1900.
The present value of the plaintiff's Templeton deferred compensation plan is $9682. This account was started in 1993 from funds that the plaintiff rolled over from a prior employer. She rolled over approximately $2000 to $2050 into this fund.
 ORDERS
This court has considered the provision of § 46b-82
regarding the issue of alimony and has considered the provision of § 46b-81(c) regarding the issue of property division, and has considered the provision § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
A. BY WAY OF DISSOLUTION OF MARRIAGE
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. No alimony is awarded in favor of either party.
C. BY WAY OF PROPERTY ORDERS
1. All of the plaintiff's interest in the property located at 38 Bailey Avenue, Plattsburgh, New York, is awarded to the plaintiff.
2. The defendant is ordered to quitclaim to the plaintiff all of his right, title and interest in the family home located in Danbury, Connecticut, by March 1, 2000.
3. The defendant is ordered to elect the 50 percent joint and survivor with leveling under his pension plan and a QDRO is to be prepared with the plaintiff responsible for its preparation.
4. All of the defendant's interest in properties at 49 Fisher Hill Road, Mineville, New York; 299 Maple Lane, Clinton Corners, New York; and Bridge Road, Crown Point, New York, are awarded to the defendant. CT Page 1521
5. The 1999 Subaru, the 1969 Chevrolet, the 1990 Geo Prism, and the 1986 Chevy Nova, shown on the defendant's financial affidavit, are awarded to the defendant.
6. The parties are in dispute regarding various personal property items that are still located at the family home in Danbury. The court enters the following orders regarding the items in dispute that are shown on Plaintiff's Exhibit 42.
A. Item number 1 is awarded to the defendant.
 B. In the event items 2, 3 or 4 are located, they are awarded to the defendant.
 C. Item number 7 is awarded to the defendant in the event they can be located.
 D. One of the hunt scene pictures in item 9 is awarded to the defendant. If the parties cannot agree as to which item he is to receive, then the court retains jurisdiction over that dispute.
E. The items in paragraph 10 are awarded to the defendant.
 F. Two of the Waterford goblets in item 12 are awarded to the defendant. If the parties cannot agree as to what those items are, then the court retains jurisdiction.
G. Item number 14 is awarded to the defendant.
H. Items number 16 and 17 are awarded to the defendant.
 I. Items number 20 and 21 are awarded to the defendant if they can be located.
J. Item number 22 is awarded to the defendant.
K. Items number 24 and 25 are awarded to the defendant.
 L. The steel file cabinet and tall oak file cabinet referred to in item number 27 are awarded to the defendant.
 M. One bookcase in item 28 that is in the bedroom is awarded to the defendant. If the parties cannot agree as to which bookcase the defendant is to receive, then the court retains jurisdiction over that dispute. CT Page 1522
 N. Item number 31 is awarded to the defendant if it can be located.
O. Item number 46 is awarded to the defendant.
 P. One log carrier that is part of item number 52 is awarded to the defendant.
 Q. The two VCR's in item number 55 and the tapes are divided equally between the parties.
R. Item number 60 is awarded to the defendant.
 S. The Hallmark classic car models that are part of item number 62 are awarded to the defendant. Further, all the Christmas decorations and Nativity set that came from the defendant's family is awarded to the defendant.
 T. Item number 70 is awarded to the defendant if it can be located.
 U. The monitor that is part of item 71 is awarded to defendant.
V. Item number 72 is awarded to defendant.
 W. One of the portable electric saws referred to in item 73 is a Sears model and that is awarded to the defendant.
X. Item numbers 74, 76 and 78 are awarded to the defendant.
 Y. A blue and white braid carpet as well as a small rug referred to in item 79 is awarded to the defendant.
 Z. The court enters no orders regarding item number 80 as that will have to be resolved in a lawsuit between the defendant and the plaintiff's father who presently has possession of the item in question.
 AA. Item number 81 is awarded to the defendant if they can be located.
 BB. Item number 82 is awarded to the defendant if it can be located. CT Page 1523
CC. Item number 83 is split equally between the parties.
 DD. The 1986 Nova referred to in item number 87 is awarded to the defendant.
 EE. The Toro referred to item number 89 is awarded to the defendant.
 FF. The boat trailer referred to in item number 91 is awarded to the defendant.
GG. Item number 92 is awarded to the defendant.
 HH. Item number 96 is awarded to the defendant if it can be located.
 II. All of the cookbooks referred to in item number 97 that came from the defendant's mother are awarded to the defendant.
 JJ. All of the remaining items referred to in plaintiff's exhibit 42 are awarded to the plaintiff.
7. The plaintiff is to pay all the liabilities referred to in Schedule A of her financial affidavit of December 8, 1999 and hold the defendant harmless.
8. The defendant is to pay all the liabilities shown on his financial affidavit dated December 3, 1999 and hold the plaintiff harmless.
9. The bank account shown on the plaintiff's financial affidavit is awarded to the plaintiff.
10. The Advantus fund, Prudential account, and Templeton account shown on the plaintiff's affidavit under deferred compensation are all awarded to the plaintiff.
11. The life insurance policy shown on the plaintiff's financial affidavit through Minnesota Life on the defendant's life in the face amount of $100,000 and a cash value of $2000 is awarded to the plaintiff. If she elects to continue the policy, then she is solely responsible for paying the premiums. This order is nonmodifiable. The Minnesota Life policy shown on the plaintiff's financial affidavit is also shown on the defendant's financial CT Page 1524 affidavit as IBM life insurance with the plaintiff as the named insured.
12. The bank account shown on the defendant's financial affidavit as well as the Advantus funds, Oppenheimer Fund, Delaware Decatur funds, U.S. Treasury Bonds, and Templeton fund as well as the Vanguard Index IRA are all awarded to the defendant.
13. The Ascend stock, Calvert fund and Galaxy fund shown on the defendant's financial affidavit are awarded divided equally between the parties both as to value and basis.
14. The IBM TDSP deferred compensation plan shown on the defendant's financial affidavit is awarded two-thirds to the defendant and one-third to the plaintiff by QDRO. The division is to be allocated both as to value and basis. The plaintiff is responsible for preparing the QDRO.
D. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
E. MISCELLANEOUS ORDERS
1. The plaintiff is to prepare the judgment file within thirty days to counsel for the defendant for signature and filing.
2. The defendant is to cooperate in order to allow the plaintiff to obtain COBRA benefits in the event she elects to obtain such benefits at her sole cost and expense. This order is nonmodifiable.
3. The plaintiff's motion for contempt arising out of the automatic orders is denied.
Axelrod, J.